The Bonham Cotton Press Company v. R. N. McKellar.
No. 161.

**1. Assignment of Errors.**
It would have been a sufficient assignment of error to have alleged simply, "that the court erred in sustaining the general demurrer to the special answer," without stating the reasons why the ruling was deemed erroneous ................................................. 700

**2. Promoters—Ratification—Entire Contract.**
It is well established as a general rule, that a corporation is not bound by the contracts of its promoters. After its incorporation it may adopt such contracts, and thereby make itself liable. If, therefore, a corporation adopt such contract, and after such adoption the other party acquiesce, and receive the benefits of the contract, he should be estopped to deny that he is bound by all its terms. See example....... 700

**3. Warranty on Sale of Machinery—Trial Test.**
Where in sale of machinery it is stipulated that before the purchaser shall be bound the machinery shall be put in operation and tested, and when such test has been fairly made and the machinery accepted the purchaser has no claim for breach of a contract of warranty......... 701

**4. Same—Fraud.**
But where it is shown that there was fraud in the test by the seller or his agent, the purchaser is not concluded from recourse upon the guaranty for defects subsequently manifest. The seller can not take advantage of a result brought about by his own fraud.................. 701

Error to Court of Civil Appeals for Fifth District, in an appeal from Fannin County.

*Taylor & Galloway* and *R. B. Semple*, for plaintiff in error.—1. The contract of the promoters with the Webb Compress Company may be enforced by the corporation after ratification. Cook on Stock, sec. 707; Beach on Priv. Corp., sec. 199.

2. The fraudulent concealment of the defects in the two platens is a good defense. 2 Pome. Eq. Jur., sec. 905; Loper v. Robinson, 54 Texas, 510; Wintz v. Morrison, 17 Texas, 372.

3. When the manufacturers sold the compress to defendants they war-

..ranted the machine for the purpose it was sold to defendants, and that the material of which it was made was not defective. Aultman & Taylor Co. v. Hefner, 67 Texas, 54; Wright v. Davenport, 44 Texas, 167; Brown v. Sayles, 27 Vt., 227; 2 Suth. on Dam., 429; Tied. on Sales, sec. 195; Benj. on Sales, secs. 727, 988.

*Maxey, Lightfoot & Denton,* for appellee.— 1. In an assignment of error, the complaining party should put his finger upon the error complained of, and no other, and an assignment which attempts to embrace several objects will not be considered by the court. Sup. Ct. rule 26; Garner v. Cutter, 28 Texas, 184; Pridham v. Weddington, 74 Texas, 354; Railway v. Redeker, 67 Texas, 189; Tudor v. Hodges, 71 Texas, 394; Jackson v. Marshall, 6 Texas, 324; Harris County v. Campbell, 68 Texas, 22.

2. As to the effect of the agreement to submit the question of compliance with the contract to the judgment and decision of a third party, and his and their acceptance after thorough test and examination, see Railway v. Henry & Dilley, 65 Texas, 691; Railway v. Marsh, 114 U. S., 549; Kilberg v. United States, 97 U. S., 398; Sweeney v. United States, 109 U. S., 613; 2 Benj. on Sales, 912c; Tied. on Sales, sec. 117.

3. The doctrine is clearly settled by the authorities, that where property is sold under an executory contract, and after the time limited in the contract, and after thorough trial and examination, it is accepted in full discharge of the contract, the vendee is not afterwards entitled to damages by reason of any failure to meet the guaranties in the contract. Underwood v. Wolf, 131 Ill., 425; Reed v. Randall, 29 N. Y., 358.

GAINES, ASSOCIATE JUSTICE.—This suit was brought by defendant in error against the plaintiff in error, a private corporation, to recover upon two promises in writing, each for $2500, executed by the defendant corporation, through its president. They were made payable to the Webb Compress Company, by whom they were transferred to the plaintiff, and were in all respects in the form of promissory notes, save that each contained a condition. There was no question raised in the trial court or upon the appeal with reference to the conditions.

The defendant pleaded a failure of consideration, by a sworn answer, the substance of which is set out in its brief as follows:

"That on July 12, 1888, certain citizens of Bonham (naming them) combined together to erect at Bonham a cotton compress. That said Webb Compress Company, through an agent, proposed to said citizens to erect one of their compresses for them on premises to be selected by said citizens, and put it in operation in time to compress the cotton sold during the cotton season of 1888. That said compress was to be an 80-inch Webb cotton compress, of the latest and most approved pattern; should

be equal to and do the work in quantity and quality of the Morse cotton compress. That it was to be operated by said citizens until January 1, 1889, with the privilege of said Webb Compress Company to direct the running of said compress until said date. That for such a compress said company was to receive $25,000, payable as follows: In promissory notes of said citizens $10,000, $10,000 in money, and $5000 in two notes, due January 1, 1890, and January 1, 1891, respectively. That said proposition was reduced to writing, and on July 16, 1888, accepted and signed by said Webb Compress Company. That said citizens were then preparing to organize themselves into a private corporation, and on July 25, 1888, did incorporate themselves under the provisions of title 20 of the Revised Statutes of Texas. That said enterprise was formed for the purpose of compressing the cotton that was raised in Fannin County in the fall of 1888, of which there were 20,000 bales, and for succeeding years. That this purpose was well known to the officers and agents of the Webb Compress Company while they were negotiating said contract.

" That in September and October, 1888, said Webb Compress Company delivered and put up at Bonham on defendant's premises for defendant an 80-inch compress of the Webb patent, with the necessary attachments and appliances. That none of the stockholders at said date had any knowledge about compresses, but defendant relied solely upon the representations of said Webb Compress Company, its agents and officers, that said Webb compress was equal to and would do the work of the Morse compress, and upon said guaranty to that effect in said contract. That said Morse compress is the best in the United States, without flaw in its make and capable of compressing cotton without breakage or delay. That as soon as said compress was put in operation said Webb Compress Company placed S. J. Webb, the inventor and patentee, in charge of the running of said compress, with the approval of defendant, in accordance with the provisions of said contract, and said Webb continued in said charge until January, 1889.

" That in October, 1889, while said compress was running, the upper platen of said compress broke so that said compress thereafter could compress not another bale until said platen should be replaced by another. That the weight of said platen is 15,000 pounds and the weight of the upper platen of a Morse compress is 20,000 pounds. That while said Webb was thus running said compress he did not so manage it that a fair test could be made, but would not apply the full force required to properly compress cotton, nor would he permit sufficient force to be applied to place the cotton in marketable condition, and thereby defendant had to pay numerous reclamations made long subsequently to January 1, 1889, on bales not sufficiently compressed. That said Webb also refused to compress a sufficient amount of cotton a day to test the durability and capacity of said compress. That he compressed only 400 bales a day,.

when the Morse compress compresses 600 bales a day. That he so managed the lever by which the steam was applied that the full amount of pressure for the compressing of cotton was never applied during the time he managed the compress as agent and representative of said Webb Compress Company, and thereby no fair test was made by him of the strength of said upper platen. That these acts of Webb were for the purpose of defrauding defendant and concealing from it the defects in said platen. That none of these facts came to the knowledge of defendant, nor was it aware of the fraudulent acts of said Webb until many months subsequently to January 1, 1889. That none of defendant's stockholders were practical mechanics at the time said Webb was making said pretended test. That thus he was enabled to conceal from defendant said fraudulent devices.

"That said break in said upper platen was occasioned by a latent defect in the casting of said platen. That there was an old crack or break in said platen when the same was first placed on said premises, but it was concealed from view by being painted over, and defendant could not discover the same. That said break was without fault on defendant's part, but said compress was then operated by competent and experienced employes. That the platens for said compress were made nowhere else but at York, in the State of Pennsylvania, and none were then procurable in the markets, but had to be manufactured at the factory in said city of York, upon the order of said Webb Compress Company. That immediately upon said breakage defendant telegraphed the general manager of said Webb Compress Company of said breakage, and requested him to order a new platen and have the same delivered to defendant. That the same was done and the same was put in place on November 19, 1889. That during the interval while said compress was idle on account of said breakage, defendant had on hand a great amount of cotton for compressing, and would have compressed 500 bales per day, and was when running receiving $200 net profit a day. That after said new platen had replaced said broken one said compress was again put in operation, and so continued compressing cotton for defendant until December 26, 1889, when the lower platen was broken while said compress was at work. That the weight of said lower platen was 10,000 pounds, while the lower platen of a Morse compress is several thousand pounds greater. That this breakage was occasioned by a latent defect in the casting thereof, and its design was defective, in this, that it was necessary in the working of said compress that said platen, when raised by the working of the piston rod, should be supported by a flow of water under the platen; that the cylinder, which was a part of the lower platen, was first made too short, and to remedy the same the manufacturers bolted on the end of said cylinder a ring of iron, increasing the length thereof so that the cylinder rested on a part of the machinery known as the seat in such manner as to pre-

vent the flow of water under the end of the cylinder and destroying thereby the hydraulic force requisite for the proper working of the compress. That by the structure of the compress the lower end of said cylinder thus patched was enclosed in an outside iron drum in which it worked, so as to be concealed from view, and the above fact was never discovered by defendant until said breaking of said platen and removal from its place in said machinery. That by thus lengthening said cylinder the compress would not work, and to remedy such defect the said Webb, while operating said compress, had placed wooden blocks under each end of said platen and thus raised the end of said cylinder off said seat and permitted the flow of the water into the hydraulic cylinder. That by the use of said blocks the pressure on the different parts of said lower platen was unequal, and thereby when said compress was in operation as aforesaid, said break took place.

"That the said compress was the first manufactured for said Webb Compress Company. That the said compress, after being examined by said Webb Compress Company, was decided to be too weak in its various parts to perform the work it was intended for, before it was sold to defendant, but this fact was fraudulently concealed from defendant, and was not known to defendant until long after the execution of the notes sued on. That defendant notified said Webb Compress Company of said breakage, and the said company recognized the said defect in the construction of said machinery by adopting a new design to remedy said defect, suggested by defendant's superintendent, by which new design a flow of water could be forced under said ram and thereby equalize the pressure upon said platen. That said Webb company, at the expense of defendant, did furnish defendant a new platen with said new design and of much greater weight. That when said Webb Compress Company proposed to sell said compress to said citizens, it represented that said compress was of a better design and make than the said Morse compress, and while their agent knew of the operating of such machinery, neither defendant nor said stockholders knew anything about it. That defendant has been damaged by said breakages, and specifies the items of damages, amounting to over $5000.

"That plaintiff is not the real owner of the notes sued on. That the endorsements of said notes to him are simulated, and were fraudulently made for the purpose of preventing defendant from making said defenses. That plaintiff was president of said Webb Compress Company when said contract was made, and was one of the principal agents of said Webb Compress Company in procuring its execution by defendant, and had full knowledge of all the facts herein stated before his pretended purchase of said notes. That said contract is in writing, attached to plaintiff's first supplementary petition, and made a part of defendant's answer. That the damages sought to be recovered by defendant for said breakages were

such as were contemplated by said Webb Compress Company and defendant at the time of the execution of said contract.

"The contract referred to is dated July 12, 1888, is signed by about twenty citizens of Bonham, and accepted by plaintiff as the president and R. Freeman as secretary of the Webb Compress Company. By its terms the Webb Compress Company agrees to furnish the said citizens an 80-inch Webb cotton compress, of the latest and most approved pattern, to compress for said citizens the cotton sold in Bonham and adjacent thereto. It was to be put in operation to compress the cotton sold during the cotton season of 1888, to be operated by said citizens until January 1, 1889, with the privilege of said Webb company to direct the running of said compress until said date. The said Webb company guaranteed that said compress should be equal to and do the work in quantity and quality of the Morse compress. If said compress was put in operation by said Webb Compress Company, and the running of said compress was satisfactorily done in compliance with said guaranty of said company, the trustees of said citizens were on said January 1, 1889, to execute two notes, each for $2500, bearing 8 per cent interest from the operating of said compress, the first due January 1, 1890, and the second due January 1, 1891, with a mortgage upon the property invested in said enterprise. Ten thousand dollars was to be paid in notes of said citizens, payable January 1, 1889, $10,000 in cash. If said guaranty failed of accomplishment, said contract was to have no effect, said notes were to be restored to their makers, and said Webb company was to receive back the said compress.

"The answer prays that the damages aforesaid may be recouped and offset against said notes."

Defendant also filed a trial amendment, alleging, in substance: "That all the defects mentioned in its amended answer existed when said compress was manufactured. That these defects were unknown to defendant, and undiscoverable by reason of the manner in which they had been concealed from defendant by said Webb company. That the value of said compress without said defects was $25,000, and with them $22,500. That defendant ratified and adopted said contract made by said citizens with said Webb Compress Company, and on January 1, 1889, being then organized as a corporation, and having purchased said stockholders' notes, paid the amount in money to said Webb Compress Company, issued to them $10,000 in stock in its corporation, and executed the notes sued on. That defendant, believing that said compress and appliances were of an approved pattern and without the said defects, and relying upon the warranties contained in said contract, paid said money, issued said stock, and executed said notes to the said Webb company, but would not have done so if it had known of said defects."

A general demurrer to the special answer and trial amendment was sustained by the court, and the point was reserved by an exception duly

entered of record.  On appeal the ruling of the court was assigned as error, but the Court of Civil Appeals held that the demurrer was properly sustained, and affirmed the judgment in favor of the plaintiff.

In the brief of the appellee filed in the Court of Civil Appeals it is objected that the assignment of error as to the ruling of the court in this particular is too general; but we think, on the contrary, that the assignment is unnecessarily specific.  It would have been sufficient to have alleged simply that the court erred in sustaining the general demurrer to the special answer, without stating the reasons why the ruling was deemed to be erroneous.  Clarendon Land, etc., Co. v. McClelland Bros., 2 Texas Civ. App., 188.

We presume that the trial court sustained the demurrer, and that the Court of Civil Appeals affirmed that ruling upon one of two grounds: (1) either that the averments of the answer did not show any privity on part of the defendant corporation in the contract for the sale of the machinery, or (2) that the contract having provided for a test of the machinery before the sale was to be absolute, and such test having been made, and the machinery thereafter accepted by the defendant, it could no longer insist upon the warranties made in the agreement.

We will dispose of these questions in the order in which they have been stated.  It is now well established as a general rule, that a corporation is not bound by the contract of its promoters.  Railway Co. v. Granger, 85 Texas, 574; Penn Mach. Co. v. Hopgood, 141 Mass., 145; Abbott v. Hopgood, 150 Mass., 252.

It may, however, after its incorporation adopt such a contract, and may thereby make itself liable upon it.  It follows, that if a corporation adopt a contract which has been entered into by its promoters, in contemplation of its creation and for its benefit, and if the other party acquiesce in such adoption and receive the benefits of the agreement, he should be held estopped to deny that he is bound by all its terms.

It appears from the allegations in the answer, that at the time the contract was entered into between the promoters of the enterprise and the Webb Compress Company, they contemplated forming the corporation; that after the agreement was executed and after the corporation was organized, the Webb Compress Company, in pursuance of the agreement, placed the machinery upon the premises of the defendant corporation and there erected it for its benefit.  The machinery was there operated under the supervision of an agent of the Webb Compress Company, in order to make the test of its efficiency and capacity, as provided for in the original contract.  After the test had been made the work was accepted by the defendant, and it thereupon paid the sum of $10,000—the cash consideration for the machinery—discharged or purchased the stockholders' notes for a like amount, and thereupon executed its own notes for the

balance, precisely in accordance with the terms of the contract with the promoters.

After accepting the machinery, could the defendant have refused to pay the consideration according to the terms of the original agreement? Clearly not. If not, can the Webb Compress Company be permitted to say that it is not bound by all the stipulations in the agreement which were made with the promoters? It is clear, we think, from the averments of the answer, that the contract was treated and adopted, both by the Webb company and the defendant corporation, as a contract between them, and that it became binding upon both.

In regard to the second question, it may be conceded, that when the seller of machinery warrants its quality and capacity, and the contract provides that before the purchaser shall be bound the machinery shall be put in operation and tested, and when the test has been fairly made and the purchaser has accepted the property, he can no longer claim damages, either in an action by him or by way of recoupment of the purchase money for a breach of the warranty. But in this case it is alleged, in substance, that the agent of the Webb Compress Company, who was placed in charge of the compress after it was erected, for the purpose of operating the same, and making the test as required by the terms of the contract, purposely and fraudulently failed to apply the necessary power in order to compress the cotton properly, and to make a fair test of the strength of the machinery. The reasonable intendment from the averments is, that the agents of the defendant company were ignorant of the business, and did not know that the test was not fairly made. If this be true, and if after the defendant accepted the machinery and executed the notes it was discovered that the strength of the compress was not such as was warranted in the contract, then we are of opinion that the defendant was not precluded by such acceptance from claiming damages for a breach of the warranty. If the test be fair, the purchaser should be bound by his acceptance; but we think it too clear to require discussion, that if the test be made by the seller, and it be purposely insufficient and unfair, the purchaser should not be so bound. The seller can not take advantage of a result brought about by his own fraud.

The judgment of the District Court and of the Court of Civil Appeals is reversed and the cause remanded.

*Reversed and remanded.*

Delivered May 17, 1894.