## T. W. SHEARER v. GAAR, SCOTT & CO.

Decided November 27, 1905.

**1.—Traction Engine—Contract of Sale—Warranties—Waiver.**

A contract of sale with its warranties and stipulations considered, and held, that the defendant, by his failure to comply with the terms of the contract signed by him, had released the plaintiff from all liability upon its warranties.

**2.—Harmless Error.**

Because the defendant had released the plaintiff from liability upon its warranties, the action of the court in sustaining an exception to defendant's plea in reconvention and in excluding evidence in support of said plea, if error at all, was harmless error.

Appeal from the District Court of Galveston County. Tried below before Hon. Robert G. Street.

*J. R. Davis* and *H. E. Marshall,* for appellant.—The court erred in sustaining plaintiff's special exception to that part of defendant's answer wherein defendant plead in reconvention for consequential damages on account of delay in the building of defendant's canal, and money expended and time lost in endeavoring to make the machine run and perform the work for which it was sold to defendant, because defendant's pleadings showed that said damages were within the contemplation of the parties at the time said engine was sold and contract made. Aultman & T. Co. v. Hefner, 67 Texas, 59; Jones v. George, 61 Texas, 345; Dean Co. v. Standifer, 11 Texas Ct. Rep., 414; Beeman v. Banta, 16 Am. St. Rep. (N. Y.), 779; Houchins v. Williams, 25 S. W. Rep., 730; McCaa v. Drug Co., 62 Am. St. Rep. (Ala.), 88; Aultman T. Co. v. Cappleman, 10 Texas Ct. Rep., 961.

The defendant, under his pleadings, could show that the engine in controversy had been sold by plaintiff for the purpose of being used by defendant for the purpose of pulling an elevator grader, and that, with full knowledge of what it would be used for, plaintiff warranted and guaranteed it for that purpose before it was ordered by defendant and before defendant had seen same. Dean Co. v. Standifer, 11 Texas Ct. Rep., 414; Cash v. De Long, 53 S. W. Rep., 1037; Beeman v. Banta, 16 Am. St. Rep. (N. Y.), 779; McCaa v. Elam Drug Co., 62 Am. St. Rep. (Ala.), 88.

Before the engine was sold, and before it was seen by defendant, plaintiff represented that it was adapted to pulling an elevator grader, and defendant, having advised plaintiff that he relied on plaintiff's judgment and representations, plaintiff thereby became bound as on an express warranty, which said warranty was collateral to the contract of sale, and a failure of the engine to perform the work for which it was sold was a breach of said warranty by plaintiff, which defendant could urge as a defense to a suit for the purchase price, or bring an independent action, and said excluded testimony was admissible on that ground. Dean Co. v. Standifer, 11 Texas Ct. Rep., 414; McCaa v. Elam Drug Co., 63 Am. St. Rep., 88; Pacific Guano Co. v. Mullen, 66 Ala., 582; Benjamin on Sales, secs. 157, 485; Deming v. Foster, 42 N. H., 174.

While appellant insists that he does not have to show fraud in order to avail himself of the defense of breach of warranty, on account of the worthlessness of the engine for the purpose for which it was sold, yet, if he be mistaken in that, his answer alleges the facts, and if those facts constitute fraud the plea is sufficient, although it does not specifically denominate such facts fraud. It is not necessary to show fraud or deceit. Nations v. Love, 26 S. W. Rep., 232; McCaa v. Elam Drug Co., 62 Am. St. Rep., 88; Perry v. Johnson, 59 Ala., 648.

When machinery or other property is sold by a party to be used for a particular purpose, and it is unfit for said purpose, the vendee can defeat an action for the purchase price by pleading and proving those facts in offset to plaintiff's suit. Dean Co. v. Standifer, 11 Texas Ct. Rep., 414; Mills v. Johnson, 3 Texas Civ. App., 359; Danner v. Fort Worth Implement Co., 18 Texas Civ. App., 621; Aultman T. Co. v. Hefner, 67 Texas, 59; Bonham Cotton Press Co. v. McKellar, 86 Texas, 701; Beeman v. Banta, 16 Am. St. Rep., 779.

The court erred in holding that the defendant failed to notify plaintiff of breaks and defective condition of the engine in time to have the contract rescinded, because the evidence shows that plaintiff did have such notification, and further shows plaintiff had its experts and employes, from the time said engine was delivered up till the time it was abandoned, working on and with said engine, and that plaintiff was well aware all of the time of the exact condition of the engine.

The warranty for the particular purpose for which the engine was sold, as plead by defendant, was not part of the contract which plaintiff introduced in evidence, but is a collateral and independent matter, by which plaintiff vouched for the fitness of the engine for the purpose for which it was sold. Such warranties are always collateral to the contract of sale. Dean Co. v. Standifer, 11 Texas Ct. Rep., 414; Cash v. De Long, 53 S. W. Rep., 1037.

*Crook & Harris,* for appellee.—If we should admit that all the errors complained of were committed, still the judgment was the only one that could have been rendered under the pleadings and evidence, because it is undisputed that defendant did not return the machinery, nor offer to return it, to Dayton, Texas, where he received it, nor notify plaintiff. at Richmond, Indiana, that he had so returned it, as required by the written contract. The general rule that a defendant may decline to return an article which is alleged to be wholly worthless, or where there is an express warranty, has no application where the contract stipulates for such return as a condition precedent to rescission, or as a remedy for breach of the warranty. Case Machine Co. v. Hall, 7 Texas Ct. Rep., 471, 73 S. W. Rep., 835, and cases there cited; Haynie v. Plano, 11 Texas Ct. Rep., 145, and cases there cited; Aultman v. McKinney, 26 S. W. Rep., 267; Mechem on Sales, sec. 1396, and cases there cited. . A written warranty excludes proof of a parol one, and an express warranty excludes the possibility of another and implied one respecting the same subject matter. Case Machine Co. v. Hall, 7 Texas Ct. Rep., 469; Aultman v. McKinney, 26 S. W. Rep., 268; Seitz v. Brewers' Refrg. Co., 141 U. S., 510, 35 L. Ed., 837; Webster's Dictionary, under "Horse-power."

The measure of damages on a breach of warranty is the difference between the value of the article as it is and as it was represented to be. Wright v. Davenport, 44 Texas, 167; Stark v. Alford, 49 Texas, 275; Snyder v. Baker, 34 S. W. Rep., 981; Russell v. Walker, 1 App. Civ., sec. 889; Miles v. Patterson, 2 App. Civ., sec. 783.

Where on the sale of personalty a warranty is given, and the purchaser is required to give notice both to the vendor and his agent of alleged defects in the property, the vendee can not recover for a breach of warranty where, though he gave notice to the agent, he did not to the vendor, as stipulated for, unless there is a waiver of the stipulation, which has to be specially plead. Aultman v. York, 20 S. W. Rep., 851; Fahey v. Esterly Machine Co., 3 N. Dak., 220, 44 Am. St. Rep., 557; Aultman v. Gunderson, 6 S. Dak., 226, 55 Am. St. Rep., 842.

PLEASANTS, ASSOCIATE JUSTICE.—This suit was brought by appellee, a corporation organized and chartered under the laws of the State of Indiana, against appellant, to recover upon two promissory notes for the sum of $641.66 each, and to foreclose a mortgage given by appellant upon a traction engine described in the petition, to secure the payment of said notes.

The defendant answered by general demurrer and general denial, and by special plea, in which it is averred in substance: That, about the 27th of June, 1902, he was desirous of purchasing a traction engine to be used in drawing and pulling an elevator grader for grading his rice canal; that he was ignorant of the character and kind of engine required for such work; that he informed plaintiff and its agent of these facts, and that he relied on it to furnish an engine suitable for such work; and plaintiff, with knowledge of these facts, represented and guaranteed to defendant that it could furnish an engine such as desired, and such as would perform in a satisfactory manner the work of pulling said elevator grader, and defendant, relying on such representations, ordered from plaintiff the twenty-two horsepower compound traction engine in controversy, and promised to pay therefor the sum of $1,925 in three promissory notes, as set forth in plaintiff's petition, the engine to be delivered to defendant by plaintiff at Dayton, Texas; that plaintiff further impliedly represented, guaranteed and warranted that said engine should be made of good, substantial and durable material, such as is ordinarily used in making first-class traction engines, and that said engine and all its parts should be properly and skillfully constructed, so that same should work and run smoothly and correctly and properly, such as first-class traction engines, when properly built and constructed, do and perform, and that said engine should in all respects be first-class and proper; that said engine was delivered to defendant at Dayton, Texas, in July, 1902; that thereafter he executed said notes under an agreement and understanding with plaintiff that the execution thereof should not be a ratification or an acceptance of said engine, or a waiver of the defects as to said warranties and representations; that said engine was, and has proved, totally ineffectual and deficient in performing the work which it was represented and guaranteed to perform, and is entirely inadequate in strength and power to draw an elevator grader, and is not made of first-class material, and was

improperly constructed, and would not perform the work it should have performed.

"That, on account of the facts set forth, defendant has been unable, and it is impossible, to realize any benefit from said engine, and that, on account of continual breaks of said engine, caused from its aforesaid defects, defendant lost six months' time in the work of grading his canal. That defendant tried and endeavored for said six months to make and cause said engine to run, in cooperation with plaintiff's experts and representatives, and rendered plaintiff all aid and friendly assistance in defendant's power to render towards consummating said purposes, and employed a competent person to run said engine, but defendant had to abandon said engine, because same was wholly worthless, and purchase a new engine for the sum of $2,700. That said defects herein set out, and all defects, and failure of warranty, and false representation, as herein set out, were wholly unknown to defendant until the time when defendant abandoned said engine; and said defects were hidden to defendant until said time. That defendant has been damaged in loss of time spent, and work hired to be done, on said engine, and in connection therewith in the sum of $2,500, and delay of six months in working on said canal in the sum of $500."

It is further averred "that, because of said facts, there has been a total failure of consideration, which failure of consideration defendant here and now pleads and urges." This plea concludes with the following prayer:

"Defendant prays that the contract set out, and on which the notes sued on by plaintiff were given, be canceled; that said notes be canceled, and said mortgage be canceled, and that defendant either be permitted to retain said engine in compensation for the note paid by defendant, or, if said engine be returned to plaintiff, that defendant have and recover of plaintiff the amount of said note and legal interest. In the alternative, defendant prays, if said contract be not canceled, that defendant have and recover of plaintiff, as an offset to plaintiff's demand on said notes, the difference between the actual value of said engine, as herein pleaded, and the amount for which plaintiff sues.

"By way of reconvention, defendant further prays judgment against plaintiff also in the sum of $3,000 for his consequential damages as above set out, occasioned as above set out.

"Defendant prays for such other relief, in law and equity, as he may be entitled to."

In answer to this plea plaintiff, by supplemental petition, set up the contract under which said engine was sold to defendant, and alleged that, under the terms of said contract, plaintiff was released from all liability upon its warranties by reason of the failure of the defendant to notify it of the alleged defects in said engine and to return the defective parts thereof within the time specified in the contract, and by the execution by the defendant of the notes described in said contract and herein sued on, and because defendant continued to use the engine long after the time mentioned had expired.

The cause was tried to the court, and resulted in judgment in favor of plaintiff for the full amount claimed in the petition.

The engine, in part payment for which the notes sued on were exe-

cuted, was sold by plaintiff to the defendant on a written order signed by defendant on June 27, 1902. This order contains the following stipulations:

"June 27, 1902. The undersigned this day orders of Gaar, Scott & Co., Richmond, Indiana, through their agent, Stowell Lumber and Implement Company, at Stowell, Texas: Quantity, 1; size, 22-horse; description, compound; article, traction engine and attachments. In consideration whereof the undersigned agrees to receive the same on its arrival, subject to all the conditions of warranty printed herein, pay freight charges from Richmond, Indiana; also agrees to pay to their order, at the time and place of delivery, the sum of $1,925 in the following manner: . . . machinery to be loaded on cars at Richmond, Indiana, on or about at once, and shipped to T. W. Shearer, consignee, at Dayton, Texas, county of Liberty, State of Texas.

"Warranty.

"Caution: No person, unless authorized in writing from the home office at Richmond, Indiana, by an officer of Gaar, Scott & Company, has any authority to add to, abridge or change this warranty in any manner, and to do so will render it void and of none effect.

"1. It is hereby mutually agreed and understood, by and between the parties hereto, that this contract is divisible, and that each article herein ordered is ordered and sold at a separate price, and is included in this contract at a separate fixed price, which price for any given article above ordered shall be ascertained by multiplying the amount representing the total consideration herein mentioned to be paid by the purchaser, by a fraction whose numerator shall be the price of said article as the same appears in Gaar, Scott & Company's 1902 price list, and whose denominator shall be the total list price of all of said articles herein ordered appearing in said price list, to which reference is hereby made and which is made a part hereof; and that said articles are sold subject to the following express warranty, and none other, which said warranty is hereby made to apply separately to each machine or attachment herein ordered.

"2. Each article of machinery (except belting) furnished on this order is warranted to be made of good materials, well constructed, and, with proper use and management, to do as good work as any other of the same size and rated capacity made for the same purpose. If, inside of six days from the day of its first use, any of the said articles of machinery shall fail in any respect to fill this warranty, written notice shall be given immediately by the purchaser to Gaar, Scott & Company, at their home office, Richmond, Indiana, and written notice also to the local agent through whom the same was received, stating particularly what parts and wherein it fails to fill the warranty, and a reasonable time allowed the company to get to the machinery with skilled workmen and remedy the defects, if any there be (if they be of such nature that the remedy can not be suggested by letter), the purchaser to render all necessary and friendly assistance and cooperation in making the machinery a practical success. If any part of the machinery can not be made to fill the warranty, that part which fails shall be

returned immediately by the undersigned to the place where it was received, and written notice of such return given to the company at its home office, with the option in the company either to furnish another machine or parts in place of the machine or part so returned, or return the money and notes which shall have been given for the same, provided, however, that if the above machinery has all been settled for in one series of notes, then the above agreed purchase price for that part of machinery or attachments so returned shall be endorsed upon each of the said notes, each note receiving an endorsement for its pro rata share of the price of such article or attachment so returned; and thereby rescind the contract *pro tanto* or in whole as the case may be, and said company be released from any further liability whatever herein. If Gaar, Scott & Company shall furnish another machine or attachment in place of the one returned, the terms of the warranty shall be held to be fulfilled, and Gaar, Scott & Company shall be subject to no further liability under this contract. . . .

"6. All warranties to be invalid and void in case the machinery is not settled for when delivered, or if this warranty is changed whether by erasure, addition or waiver.

"8. It is further mutually understood and agreed that use of said machinery, after the expiration of the time named in the above warranty, shall be conclusive evidence of the fulfillment of the warranty, and full satisfaction to the undersigned, who agrees thereafter to make no other claim on Gaar, Scott & Company; and further that, if the above machinery or any part thereof is delivered to the undersigned before settlment is made for same as herein agreed, or any alteration or erasures are made in the above warranty, or in this special understanding and agreement, the undersigned waives all claims under warranty; neither shall the fact of any local or traveling agent or expert of this company rendering assistance of any nature after the above warranty has been concluded, operate as an extension of the conditions thereof. I herewith declare that I have carefully read this order, and am acquainted with its contents which I accept. I also acknowledge having this day received a copy of Gaar, Scott & Co.'s price list for 1902, referred to above, and of this order.

Signed, T. W. Shearer."

"Accepted by Gaar, Scott & Company, at Richmond, Indiana."

The facts found by the trial court, which we adopt as our findings, are as follows:

"The notes and mortgage, though bearing date July 17, 1902, were actually executed some time in the month of September of that year. The one first maturing was paid. The plaintiff knew at the time of the sale the purpose for which the engine was to be used, that of pulling an elevator grader in the construction of a rice canal, and it was sold upon representations made by the plaintiff and by its authority that it was adapted for that use. The contract was accepted and signed by the plaintiff at its home office, Richmond, Indiana. The engine was delivered at Dayton about the 10th of August, 1902, the unloading being superintended by one Joplin, an expert sent for that purpose by the plaintiff. Another expert, Puckett, who testified on the trial, was sent by the

plaintiff to set the engine up and put it to work. He arrived a few days later and remained on the canal engaged in this work until about the 5th of September following. During which time the engine broke down repeatedly under his management owing to defective material and unskillfulness in construction. Defendant continued to use or try to use it until May, 1903, when it was stored away as unfit for use. The engine was not adapted for the purpose for which it was sold and was continually breaking down from inherent defects and faulty construction up to the time of final abandonment. When the defendant gave his notes in September for the purchase money there was an adjustment made between him and the agent, Ogden, of a counter-claim which resulted in an allowance to the defendant of $75 to be paid by Ogden at the time of the payment of the note first falling due, and which was in fact subsequently so paid.

"The first day of the use of the engine by defendant from which six days' limitation of notice of defects would run, was the 6th day of September, 1902, being the day after the expert Puckett having put the machine, as it was supposed, in order, had left its future operation to the defendant. On that day the defendant, acting by his agent, A. R. Shearer, addressed a postal card to Puckett as follows: "Dear Sir: At noon today the engine seemed to be doing very well and I believe she will continue to do so. Respy. A. R. Shearer, September 6, 1902."

"Defendant did within the six days specified in the contract notify plaintiff's local agent, the Stowell Lumber and Implement Company, of Stowell, Chambers County, or Ogden its representative, of defects in and about the engine that had caused it to break down. The defendant never did give such notice 'to Gaar, Scott & Co. at their home office, Richmond, Indiana.' The engine was never returned or offered to be returned."

The evidence further shows that an engine of the kind and rated capacity of the one in question if properly constructed would have performed the work which this engine was guaranteed to perform; the defect in the engine being in the insufficient strength of the material of which it was made. The evidence is conflicting upon the issue of whether the notes and mortgage were executed by defendant with the agreement or understanding on the part of plaintiff's agent to whom they were delivered that their execution was not a waiver or release of any claims of defendant under the warranty provision of his contract of sale. The agent of plaintiff who procured defendant's signature to the notes and mortgage testified that no such agreement was made.

We are of opinion that upon these facts the trial court did not err in holding that defendant by his failure to comply with the terms of the contract signed by him had released plaintiff from all liability upon its warranty. There are no allegations of fraud or mistake in the execution of the contract, and appellant must be held bound thereby. The language of the contract is plain and unambiguous and by its terms appellant was required if any defect appeared in the machinery within six days after he began to use it to immediately notify appellee at its home office of such defect, and appellee was to be allowed a reasonable time to remedy such defect, and if same could not be made to

comply with the warranty it should be returned to the place where it was received by defendant, and written notice of such return given appellee, who would then have the option to either rescind the sale or to replace the defective machinery with other that fulfilled the terms of the warranty. After these provisions the contract contains the following:

"It is further mutually understood and agreed that use of said machinery, after the expiration of the time named in the above warranty, shall be conclusive evidence of the fulfillment of the warranty, and full satisfaction to the undersigned, who agrees thereafter to make no other claim on Gaar, Scott & Company; and further that, if the above machinery or any part thereof is delivered to the undersigned before settlement is made for same as herein agreed, or any alteration or erasures are made in the above warranty, or in this special understanding and agreement, the undersigned waives all claims under warranty; neither shall the fact of any local or traveling agent or expert of this company rendering assistance of any nature after the above warranty has been concluded, operate as an extension of the conditions thereof."

The trial court finds that notice of the defects in the machinery, which was discovered within six days after the defendant began its use, was not given appellee as required by the contract, that the machinery was not returned to the place where it was received by defendant, and that defendant continued to use it or try to use it for more than six months thereafter and has never offered to return it to plaintiff. These findings of fact are all sustained by the evidence. Under these facts we think it clear that defendant has released plaintiff from all claims which he might have against it for failure to comply with his warranty. The terms of the contract may be hard and unreasonable, but appellant has made it, and in the absence of fraud or mistake in its execution he must be held bound thereby. Case v. Hall, 7 Texas Ct. Rep., 471; Haynie v. Plano, 11 Texas Ct. Rep., 145; Aultman v. McKinney, 26 S. W. Rep., 267; Equitable Mfg. Co. v. Stevens, 1 Texas Ct. Rep., 492; Fahey v. Machine Co., 44 Am. St. Rep., 557.

The first assignment of error, which complains of the ruling of the trial court in sustaining plaintiff's exception to that portion of defendant's answer claiming consequential damages, for expenses incurred and for delay and loss of time occasioned by plaintiff's failure to comply with its warranty in the sale of the engine, can not be sustained in view of the conclusion we have reached, as above stated, upon the question of plaintiff's liability on its warranty. If it be conceded that the exception was improperly sustained the error was manifestly harmless, because the evidence shows that the right of the defendant to assert any claim against plaintiff for damages for alleged breach of its warranty has been lost by defendant's failure to comply with the terms and conditions of the contract.

The second assignment of error complains of the ruling of the court in excluding evidence offered by defendant to the effect that before he entered into the contract he informed plaintiff of the purpose for which the engine was wanted, and that he did not know the character of engine required for the work, and relied on plaintiff

to furnish him one suitable for performing such work, and plaintiff assured him that an engine like the one described in the order was the best in the market for the work which defendant intended the engine to perform. The trial court found that plaintiff was informed of the purpose for which the engine was purchased and that it expressly warranted that it would be suitable for such purpose and would perform the work desired of it by defendant. Having found these facts the error, if any, in excluding the evidence mentioned would be immaterial. the assignment is further without merit because the evidence shows that the engine, if it had been constructed of proper material, would have been suitable for the purpose for which it was ordered and the defects complained of were all covered by the terms of plaintiff's contract of warranty, and for the reasons before stated defendant had released plaintiff from liability for not fulfilling said warranty.

There is neither pleading nor evidence which would authorize the setting aside of the written contract on the ground of fraud or misrepresentation in its procurement, and that issue is not in the case.

None of the remaining assignments point out any error that would authorize a reversal of the judgment of the court below and they are all overruled.

We are of opinion that the judgment of the court below should be affirmed and it has been so ordered.

*Affirmed.*

Writ of error refused.