A. S. CAMERON STEAM PUMP WORKS v. LUBBOCK LIGHT & ICE CO. (No. 554.)

(Court of Civil Appeals of Texas. Amarillo. April 25, 1914. Rehearing Denied May 23, 1914.)

1. CORPORATIONS (§ 410*) — OFFICERS — AUTHORITY.

Where a corporation advertised that a certain person was its general manager, a purchase of machinery by him for the corporation, which it received and installed, bound the corporation for the contract price, and it was immaterial whether the board of directors gave general authority to purchase, or whether such authority was entered on its minutes.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1629–1632; Dec. Dig. § 410.*]

2. EVIDENCE (§ 442*)—PAROL EVIDENCE—CONTRACTS — CONTRACT BY CORRESPONDENCE — WARRANTY.

Where a contract of sale was made by correspondence, the entire correspondence must be looked to to ascertain the contract and representations made therein, and a letter by the seller containing a warranty must be considered in determining the contract, though written before the letter of acceptance by the buyer, that letter showing on its face that it was not complete within itself, but that there had been previous negotiations.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1874–1897; Dec. Dig. § 442.*]

3. TRIAL (§ 48*)—RECEPTION OF EVIDENCE—ADMISSIBILITY IN PART.

Where, in an action for the price of machinery, the buyer relied on a breach of warranty, a letter by the buyer's manager to the seller with reference to the working of the machinery, and that it was not satisfactory, was admissible to show notice to the seller of the defective machinery; but it must be limited to that purpose, and not considered as evidence to prove defects.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 120; Dec. Dig. § 48.*]

4. SALES (§ 440*)—ACTIONS FOR PRICE—ISSUES—EVIDENCE.

Where, in an action for the agreed price of machinery based on the buyer's order therefor at a fixed price, the buyer relied on express and implied warranties, and alleged that he purchased the machinery on the representation that it was worth the specified price, which representation was known by the seller to be false, and that the machinery was worth less than half, evidence of an expert that the machinery in good condition was worth less than half the contract price was inadmissible.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1261–1276; Dec. Dig. § 440.*]

5. SALES (§ 40*) — REPRESENTATION — STATEMENT OF VALUE.

A statement of value of machinery sold is not ordinarily a material representation which, if false, will defeat a contract of sale, as it rests largely on opinion.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 79–83; Dec. Dig. § 40.*]

6. SALES (§ 287*) — CONTRACTS — CONSTRUCTION.

A warranty by a seller of machinery that the machinery shall be first class and give entire satisfaction to the buyer is a trial guaranty, and, after the expiration of a reasonable time, the buyer, if not satisfied, must offer to return the machinery, and until he is satisfied within a reasonable time, there is no sale.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 811–816; Dec. Dig. § 287.*]

7. SALES (§ 288*)—CONTRACTS—TRIAL GUARANTY.

Where a buyer under a trial guaranty does not, within a reasonable time, manifest his dissatisfaction, that fact is strong evidence of satisfaction, and where, after the expiration of a reasonable time, he retains the machinery, he is estopped from setting up damages for breach of warranty.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 817–823; Dec. Dig. § 288.*]

8. SALES (§ 273*)—CONTRACTS—IMPLIED WARRANTY.

A manufacturer or dealer who, without special warranty, sells machinery impliedly warrants that the same is suitable for the particular purpose for which it was manufactured or bought; but there is no implied warranty that it shall be equal to any other make in design, operation, cost of operation, or the like.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 772–776; Dec. Dig. § 273.*]

9. SALES (§ 446*)—ACTION FOR PRICE—BREACH OF WARRANTY—INSTRUCTION.

Where, in an action for the price of machinery, defendant relied on breach of warranty, a charge authorizing a verdict for the buyer if the machinery did not possess certain good qualities was not sufficient; but the charge

should require the jury to find that the machinery was defective in the particulars alleged.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1309–1317; Dec. Dig. § 446.*]

10. DAMAGES (§ 62*)—BREACH OF CONTRACT—REDUCTION OF LOSS.

A buyer of machinery under a warranty must exercise ordinary diligence to prevent loss in running the machinery if he can do so.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 119–131; Dec. Dig. § 62.*]

11. ASSIGNMENTS (§ 109*)—ACTIONS FOR PRICE—ACTION BY ASSIGNEE—LIABILITY.

An assignee of a claim for the price of machinery sold by the assignor under a warranty is not liable personally for damage occasioned by the assignor for breach of the warranty, though the claim held by the assignee may be abated or defeated.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 188; Dec. Dig. § 109.*]

12. TRIAL (§ 114*)—ARGUMENT OF COUNSEL.

It is improper for counsel for a party to state that, if the jury find any sum for the adverse party, the party will have to pay the costs.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 275–278, 296; Dec. Dig. § 114.*]

Appeal from Lubbock County Court; E. R. Haynes, Judge.

Action by the A. S. Cameron Steam Pump Works against the Lubbock Light & Ice Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

See, also, 147 S. W. 717.

R. A. Sowder, of Lubbock, for appellant. W. F. Schenck and W. D. Benson, both of Lubbock, and R. J. Dillard, of Wichita Falls, for appellee.

HUFF, C. J.   On the 26th day of January, 1911, the appellant, A. S. Cameron Steam Pump Works, a corporation, sued the appellee, Lubbock Light & Ice Company, for the sum of $322 and interest, the purchase price for a certain deep well engine, a working barrel, and 100 feet of sucker rods. It is alleged that said sum was the agreed price for said machinery, payable 30 days from delivery thereof, and was sold to appellee upon a written order signed by R. B. Ellis, as general manager of appellee; that the machinery was delivered to the appellee at Lubbock on the 20th day of May, 1910, and was set up by appellee and continuously used by it since said date; and that the debt matured June 20, 1910. It is further alleged that, at the time of making the order and the delivery, Julia F. Cameron was the sole owner of the A. S. Cameron Steam Pump Works, but thereafter the appellant company was incorporated under that name, and the contract and debt for a valuable consideration was assigned to it, and as such assignee it prosecuted the suit.

The appellee answered by the fourth paragraph that R. B. Ellis was not its general manager, and was without authority to bind it for the purchase price, and that appellant knew, or could have known, such facts, etc.

(5) Appellee ordered the goods without seeing them, and had no opportunity of examining them, and that the appellant knew the true value of same, and knew that they were not worth above the market price, $150, but represented them to be worth $322, and knew such representation to be false, and that appellee relied upon such representation, and was deceived thereby, and suffered the injury thereinafter set forth; that the order was made by letter, without seeing the articles; and that appellee was greatly in need of the same, and desired to place the same in its plant at Lubbock, Tex., which it did, still relying upon the fraudulent representations aforesaid.

(6) It is alleged by appellee that on or about the date alleged R. B. Ellis, for it, ordered by letter the articles shown in the petition; that he did so upon the warranty of appellant and its assignor. It relied upon the warranty in writing at the time of the order, and at the time said goods were so received by it and set up for use, which warranty was to the effect that the seller thereof "guaranteed them to be first class in every particular, and to give entire satisfaction in service and in operation," and that, upon the faith of such representation, it agreed to purchase and did order by letter the machinery, alleging that several letters passed between it and appellant in regard to said machinery as to its quality and price, and that by the terms thereof the goods were warranted and guaranteed in writing to be worth the amount—$320—so charged for the same, and, relying thereon, appellee unloaded and placed same in its well, from which it expected to secure water for its plant, permitting the pump, etc., to remain until the plant was ready for operation, when for the first time, by its use, appellee discovered the articles were of inferior grade, would and could not do the work guaranteed; that it required twice the power and expense to run said pump and machinery, had it been of the best grade, for which it contracted and thought it was securing, and that it notified appellant immediately thereof on May 20, 1910, that the well engine, working barrel, and sucker rods were not worth the asking price nor the price agreed upon, and were practically worthless except as scrap iron, not exceeding in value $100, if that. Because of the condition of its light and ice plant, it could not afford to be delayed in operating to secure other machinery. It was compelled to operate said machinery at a loss of $1.65 per day for about 180 days; that it cost about $2.50 per day in power and fuel to run the pump, and about two-thirds thereof was a total loss on account of a steady flow of steam coming directly from the boiler, said flow being about 1¼ inches in diameter, and would require about 30 horse power of boiler pressure and steam constant-

ly to run the pump, all of which was a total loss to it.

(7) By reason of above facts, that appellant and its assignors warranted that the machinery was worth the price paid or agreed to be paid or charged for by appellant, and that there was an implied warranty to that effect, alleging the shipment, receipt, and the setting up of the machinery, without knowledge on the part of the appellee of the quality thereof, alleging also that, after learning of the defect, appellee gave notice as heretofore set out, and that appellant made no effort to repair the machinery, and that it was not worth exceeding $100, and, by reason of the facts alleged, appellee had been damaged in the sum of $250.

The answer is sworn to, and in the affidavit it is stated that the facts with reference to want of authority and lack of agency of R. B. Ellis, either as individual or manager, the facts relating to the question of fraud, and the facts therein alleging warranty, breach of warranty, failure of consideration, "are each and all true." The letter upon which appellant bases its cause of action is upon the appellee's letter heads, in which R. B. Ellis is designated as general manager of the Lubbock Light & Ice Company. The letter is dated March 14, 1910, addressed to A. S. Cameron Steam Pump Company, New York, and is as follows:

"Gentlemen: Answering your letter of the 7th instant, beg to advise that we understand your quotation, and that you are going to furnish 1 7x36 deep well engine, 1 3¾ in.x36 in. working barrel, and 100 ft. sucker rod, all f. o. b. car New York, for $322.00. If this is right, proceed with the work. Yours truly, R. B. Ellis, G. M."

[1] Complaint is urged at the action of the court in admitting the testimony of R. C. Burns. By the first assignment it is stated he testified to the effect that he did not find from the records of appellee corporation any authority given Ellis to purchase. The second assignment, that Ellis' duty as construction manager was to keep up the construction of the plant, pay for what had been purchased, and submit anything he thought was necessary to the board. The third assignment, Burns testified that Ellis was not authorized by the directors to purchase. The sixth assignment, to an entry on the minute book of appellee corporation, to the effect that Ellis was elected construction manager, and was requested to secure information needed for securing machinery, material, and the like. There are quite a number of objections made to the admission of this testimony, which perhaps could only go to the weight of the testimony, and we are very doubtful whether any of the objections as made should be sustained. The pleadings in this case by appellee deny the authority of Ellis to purchase the machinery; but in the same sworn pleadings appellee admits that it ordered the machinery, agreed to pay the price, received and installed it. Burns swears that the station-

ery used by it had printed thereon Ellis as "General Manager," and as a matter of fact Ellis purchased the supplies for the plant and conducted the correspondence, and that his signature is to the letter. Under the pleadings in this case and the uncontroverted facts, we think it is wholly immaterial whether there was special authority given Ellis as general manager by the board of directors or not, or whether such authority was entered upon its minutes. He did order the machinery for the appellee, and it accepted and installed the same. By advertising him to the world as general manager, it held him out as such, and cannot under such conduct defeat a just obligation for machinery used by it upon the ground that the directors had not in a formal way authorized him to do the thing he did for it. We think, while this testimony would be admissible under some circumstances, under the issues in this case as made by the pleadings, and under the undisputed facts, Ellis was acting for appellee by its authority, and that it is estopped to deny that he had such authority. Railway Co. v. Ragsdale, 67 Tex. 24, 2 S. W. 515; Railway Co. v. Hill, 63 Tex. 381, 51 Am. Rep. 642. The introduction of this evidence could serve no purpose under the issues but to confuse them, and ought not to have been admitted. If everything the minutes show or did not show and all that part of Burns' evidence objected to were true, under the pleadings, appellee could not be exonerated from its liability under the obligation to pay what it admits it agreed to pay, unless it shows such defect under a warranty as will permit it to abate or defeat the purchase price. These assignments will be sustained.

[2] Under the fourth assignment of error the appellant asserts error on the part of the court in admitting in evidence the letter of November 11, 1909, in which the alleged warranty is contained. This letter is dated prior to the letter making the order March 14, 1910. The objection appears to be mainly that the letter in which the order was given was the final contract. We think the entire correspondence of the parties with reference to the machinery may be looked to in order to ascertain the contract and representations made thereby. The letter making the order shows on its face that it is not complete within itself, and that there had been previous negotiations inducing the order. The agreement or warranty must be determined from the conduct or correspondence of the parties. This must be left to the jury from all the facts under proper instructions. The warranty is a separate, independent collateral stipulation for the truth of some fact relating to the thing sold, and which does not defeat or suspend the sale or prevent the title from passing. It in effect says, if the thing is not as represented, the seller will make it good. Jones v. George, 61 Tex. 349, 48 Am. Rep. 280; Railway Co. v. Eichel (Tex. Civ. App.) 130 S. W. 936. If, as appellant contends, the

contract was in writing, and the letter itself constituted a contract, a parol warranty could not be proved. Phelps v. Parker (Tex. Civ. App.) 30 S. W. 365; Seitz v. Brewers', etc., Mach. Co., 141 U. S. 510, 12 Sup. Ct. 46, 35 L. Ed. 837. As above suggested, the order does not purport to be a contract. If the previous letters of appellant contained the warranty to the machine offered, and the jury should so find from all the facts, then if such warranty is breached, the appellee could recover therefor. We suggest at this point that neither party offered the letter or catalogue referred to in the correspondence.

[3] The fifth assignment complains at the admission of the letter of date May 20, 1910, written by Ellis for appellee, with reference to the working of the pump in question. We think this letter admissible for the purpose of notice to appellant of the defective pump, and that it was not satisfactory, but it should be limited to that purpose, and not considered for the purpose of proving the defects of which complaint is made. The fourth and fifth assignments are overruled.

[4] The seventh assignment is sustained. The witness Miller testified:

"I can tell the jury the cost price of a Cameron pump and machinery—What it would be worth in New York, f. o. b. New York. If it was in good condition, it would be worth $150."

The appellant objected to this evidence on the grounds that this was a suit for the agreed price, and not upon quantum meruit; that what it might be worth in New York was immaterial and irrelevant, and because it was not confined to the time of the sale and delivery. We think these objections should have been sustained. In appellee's order it stated:

"We understand your quotation * * * for $322. If this is right, proceed with the work."

Appellee alleged it ordered the machine without seeing it, and purchased upon the representation that it was worth $322, relying thereon, which were false and known to be so, and that the machinery was worth only $150. The allegation is not that a good machine's market value was not $322 in New York, or, that if it was in good condition, it was worth less on the market than the agreed price. Neither is there an allegation that the representations of the market value of a good machine or its value was an inducement to the purchase. We therefore conclude this is not a suit upon deceit, based upon false representations as to the value of a good machine. The pleadings are not clear as to what is claimed; but our interpretation is that it is on a breach of warranty, either express or implied.

[5] The statement of value is not ordinarily a material representation, which, if false, will defeat a contract as it rests largely upon opinion. Oneal v. Weiseman, 39 Tex. Civ. App. 592, 88 S. W. 290; Development Co. v. Silva, 125 U. S. 247, 8 Sup. Ct. 881, 31 L. Ed.

678. We do not think the pleadings or facts in this case bring the testimony under the exception to the rule. Clearly, it was not admissible under the express warranty alleged. It would not be admissible under an implied warranty. If the quality, capacity, condition, fitness, or the like was not as warranted, then the measure of the recovery would be the difference between the value of the machine as it was warranted and its value as received at the time and place of delivery. If the machine as to quality, condition, etc., was that offered for sale by appellant at a stipulated price, and appellee accepted it at that price, such agreed price cannot be defeated by the opinion of some witness as to its market value.

There are quite a number of assignments which go to the admission of certain testimony given by one Miller as to the machinery in question, such as that it takes too much power to run the pump; that other makes will do the work with 15 horse power, while it takes 30 horse power to run this; that the machine was never properly constructed in the first place; that it had been broken and afterwards repaired, and after repair was better than the pump was originally. It is hard to determine from the testimony whether the pump was broken when received, or whether it was broken afterwards. We cannot determine whether the witness intends to state the design of the pump is not a good one, or whether it was not constructed according to the design for such pumps. It appears to be the theory of the appellee that under the written warranty appellant guaranteed that the machine in design should be equal to any other make, and that included therein it would do the work on the same power that any other machine could do it.

[6] Appellant is contending here that the letter making the order is the contract, and the warranty must be limited by it. We shall not discuss the assignments specifically, but give our views on the general features of this case: If the jury found that the warranty pleaded by appellee was in fact the warranty given to the machine sold, and appellee had accepted it, then under the law it should not recover. That warranty is as follows:

"You need not hesitate to install one of our pumps, as we guarantee them to be first class in every particular, and to give entire satisfaction in service and operation."

This pump was to give "entire satisfaction." When and to whom? To you, the appellee, when you install, if not first class in every particular in service and operation, and to your satisfaction. This is, to our mind, a trial guaranty. If any other sort, it is a foolish one. It may work perfectly, so far as an expert can tell, yet not be satisfactory to appellee, and, under appellee's contention, it could then retain possession of the machine and defeat the obligation to pay and, in addition to the debt, recover damages.

In the case of Campbell Printing Press v. Thorp (C. C.) 36 Fed. 414, 1 L. R. A. 645, the company there guaranteed that the press should be "free from defective material or workmanship, and should do their work satisfactorily." Judge Brown of that court, rendering the opinion, said:

"Conceding that the plaintiff was bound to furnish presses that should work satisfactorily to the defendants, it is very evident that they were not satisfied with their operation, and that they had reasonable grounds for their dissatisfaction, as the referee finds that the press neither worked to their satisfaction nor reasonably well. This, undoubtedly, gave them the power to reject the machines. Instead of doing this, however, they kept them, and now seek to recoup their damages by reason of their failure to work as they ought to. Had the covenant been that the presses should work well, we should have no doubt that the defendants might have recouped such damages, and that the referee would have found them capable of estimation. These damages would have been the difference in value between presses which would work reasonably well and those which were actually furnished. But, in attempting to apply the same rule in the present case, we encounter a formidable difficulty from the impossibility of fixing the value of machines which shall work to the satisfaction of the defendants. It will not do to say that such value is to be gauged by that of a machine which shall work reasonably well, because such a press might not have been satisfactory to the vendee, or he might have been content with one which would not have worked to the satisfaction of experts in the business. We think that, having elected to retain the presses, they are bound to pay the full price for them."

In discussing the meaning which should be attached to these words, the court further said:

"Some doubt is thrown upon this case by the stipulation that the presses shall work satisfactory, without stating the person to whom they shall be satisfactory. We think, however, that there can be but one interpretation fairly given to these words. When, in common language, we speak of making a thing satisfactory, we mean it shall be satisfactory to the person to whom we furnish it. It would be nonsense to say that it would be satisfactory to the vendor. It would be indefinite to say that it should be satisfactory to a third person, without designating the person. It can only be intended that it shall be satisfactory to the person who is himself interested in its satisfactory operation, and that is the vendee."

The court cites several cases, among them, Machine Co. v. Chesrown, 33 Minn. 32, 21 N. W. 846; Singerly v. Thayer, 108 Pa. 291, 2 Atl. 230; Machine Co. v. Smith, 50 Mich. 565, 15 N. W. 906, 45 Am. Rep. 57; Mfg. Co. v. Ellis, 68 Mich. 101, 35 N. W. 841; Platt v. Bloderick, 70 Mich. 577, 38 N. W. 579; Gray v. Railroad Co., 11 Hun (N. Y.) 70; Aiken v. Hyde, 99 Mass. 183; Goodrich v. Van Nortwick, 43 Ill. 445. The rule, as we understand it to be in this state, "is that accepting after trial precludes the vendee rescinding the contract or defending on the ground of failure of consideration or claiming damages on account of the failure of the article to fulfill the purpose for which it was purchased." Hutches v. J. I. Case (Tex. Civ.

App.) 35 S. W. 61; Cotton Press v. McKellar, 86 Tex. 694, 26 S. W. 1056; Parks v. O'Connor, 70 Tex. 377, 8 S. W. 104; Thomas Mfg. Co. v. Griffin, 16 Tex. Civ. App. 188, 40 S. W. 755, 756; J. I. Case v. Hall, 32 Tex. Civ. App. 214, 73 S. W. 835; McCormick v. Arnold, 116 Ky. 508, 76 S. W. 323. In the Hutches Case, supra, it is said:

"The main complaint they make of the machinery is that it is wrong, in the principle or its construction and arrangement, and for that reason will not operate according to the representations made, and the answer * * * is that they tried, accepted and kept it on their own judgment as to its efficiency."

Of course, if the machinery was made of defective material and poorly constructed, if the trial for a reasonable time would not disclose such defect, and was not ascertained until after acceptance, then inquiry as to such latent defects will not be precluded. Under the allegations and proof in this case, we think that the guaranty is that the machine should work satisfactorily to appellee. If, after a reasonable time elapsed, and it was not then satisfied, it should have offered to return the machine. We do not think it can keep the machine and sue for damages on its own dissatisfaction. It was not required to keep the pump under the guaranty; but it received the same for trial and test to its own satisfaction, and until it was satisfied there was no sale. Mechem on Sales, § 665.

[7] If a party does not, within a reasonable time, manifest his dissatisfaction, it would furnish strong evidence of satisfaction. Id. 669. He is not bound to return the property; but a retention beyond a reasonable time may be evidence of satisfaction. Id. §§ 670 and 671; Benjamin on Sales, § 911, and notes (4th Ed.); McCormick v. Arnold, 116 Ky. 508, 76 S. W. 323. While there is some apparent conflict in this state as to the vendee's right to retain the machine and sue for damages as upon breach of warranty, we think the Supreme Court has settled the question that, upon taking the machine upon trial, if the vendee retains the same thereafter, he will be estopped from setting up damages upon a breach of warranty.

[8] The appellee in this case appears to rely upon an implied warranty; that is, that the machinery would pump with 15 horse power, and with no more cost than pumps of other makes, design, and construction, and was equal to others. Where a manufacturer or dealer, without special warranty, sells machinery, an implied warranty arises when manufactured to do some specific work. The rule has been stated thus: A warranty that a tool, machine, or other article is fit and suitable for a particular purpose may be implied when the one selling it knows the purpose or work to be effected. In other words, there is an implied warranty that it is reasonably fit for the purpose for which it was manufactured or purchased. Dushane v. Benedict, 120 U. S. 630, 7 Sup. Ct. 696,

30 L. Ed. 810; Brantley v. Thomas, 22 Tex. 271, 73 Am. Dec. 264; Kellogg v. Hamilton, 110 U. S. 108, 3 Sup. Ct. 537, 28 L. Ed. 86. We do not think there is an implied warranty that it shall be equal to any other make in design, operation, cost of operation, or the like. Seitz v. Brewers', etc., Mach. Co., 141 U. S. 510, 12 Sup. Ct. 46, 35 L. Ed. 837.

[9-12] Under the rules, we do not believe we can properly consider appellant's assignments to the charge of the court. We are inclined to think the pleadings insufficient in designating what particular defect of the machine is complained of, or that it is alleged the purpose for which it was purchased by appellee, and that appellant had knowledge of such purpose. We may say the charge authorizing the jury to find for the appellee, if the machine did not possess certain good qualities and the like, is not sufficient. The charge should require the jury to find that the machine was defective in the particulars alleged in the cross-petition, calling their attention to the defects as alleged. The charge in some respects is on the weight of the evidence. If the appellee could have, by the exercise of ordinary diligence, prevented the loss in running the machine, it was its duty to do so. To simply authorize a recovery for the entire season at $1.65 per day loss was in a measure assuming the loss could not have been prevented within the ice season. If appellant, by the exercise of ordinary care, could have prevented this loss, it should have done so. Under the rule announced by the charge, if appellant had alleged damage by reason of the loss of cost of running per day up to the time of the trial, the jury could have found for it that amount. Certainly there should be some limit where appellant should stop this loss. Again, appellant claims to be the assignee of the claim sued on. If it is such, it is not liable personally for damage occasioned by its assignor upon breach of the warranty. The claim held by it may be abated or defeated; but damages cannot in addition be assessed against the assignee, unless as a matter of fact it was a party to the original contract of warranty. The evidence that it was not such a party was introduced by appellee. If the evidence raises the issue as to whether it was in fact a party to the original contract of warranty, then that fact should be submitted to the jury for their finding before they would be authorized to assess damages against appellant. We also think the argument of counsel for appellee was improper, wherein he stated to the jury in effect that, if they found any sum for appellant, appellee would have to pay the costs of suit. The jury had nothing to do with the cost, and to use such an argument was calculated to influence them to render the verdict they did.

The judgment is reversed, and the cause remanded.