## WICHITA FALLS ELECTRIC CO. v. HUEY.
### (No. 1976.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 6, 1922. Rehearing Denied Jan. 3, 1923.)

1. **Appeal and error** ⟵⟶781(1)—**Appeal will be dismissed when pending appeal events happen which render decision of question moot.**

Where, pending an appeal, events have transpired which would render the question for decision moot, the appeal will not be considered, but the case itself will be dismissed.

2. **Judgment** ⟵⟶204—**Award of both damages and mandamus held error, where relief afforded by mandamus is not considered in assessing damages.**

In an action for damages for breach of contract to furnish electric lighting facilities and for mandamus to compel performance of such contract, an award of damages based on a continuing and indefinite failure to perform and grant of mandamus without taking it into consideration in assessing damages, was erroneous as giving double relief.

3. **Appeal and error** ⟵⟶781(7)—**Where, pending appeal from award of both damages and mandamus, defendant has complied with mandamus, appellate court will not dismiss mandamus feature and affirm damages, where such damages are erroneous.**

On appeal from an award of both damages and mandamus, the appellate court will not, because of the compliance by defendant with the writ of mandamus, dismiss the mandamus feature of the case and affirm the award of damages, where such damages are assessed upon an improper basis, and where, upon another trial, they will be different from those in the first because of the compliance with the writ of mandamus.

4. **Electricity** ⟵⟶11—**Damages for failure to furnish electric service.**

In an action for damages against an electric company for breach of contract to furnish electric service to a territorial addition, *held*, as to such property which the plaintiff had not sold at the time of the trial, the damages would be such as proximately resulted from the delay in getting the service, and as to such property already sold the damages would depend upon the facts proved.

5. **Damages** ⟵⟶40(2)—**Recovery for loss of profits or for gains prevented depends upon whether parties at time of making contract contemplated that ascertainable damages would follow its breach.**

Recovery for loss of profits or for gains prevented may be had, provided it was in con-

templation of the parties at the time of making the contract that such damages would naturally follow its breach and further that the amount of such damages may be ascertained with a reasonable certainty.

**6. Corporations ☞406(4) — General manager of electric company held to have authority to bind corporation on contract to extend electric service.**

A general manager of an electric company *held* to have authority to bind the corporation on a contract to furnish electric service to a territorial addition.

**7. Evidence ☞352(2)—By-laws of corporation held admissible to support contention that its general manager was without authority to execute contract sued upon.**

The by-laws of a corporation are admissible in evidence to support a contention that its general manager had no authority to bind the corporation on a contract to furnish electric service to a territorial addition.

**8. Corporations ☞298(2)—Directors should act as board and hence testimony of two as to what action would have been taken on general manager's unauthorized contract if submitted to board, not admissible.**

The board of directors of a corporation should act as a board, and hence in an action against an electric company for breach of contract to furnish electric service, the testimony of two directors that they would have voted in favor of making the extension if it had been submitted to the board of directors, was not admissible to show what would have been done with the unauthorized contract of its general manager, had it been submitted to the board of directors.

**9. Corporations ☞433(1)—Testimony held not sufficient to hold as matter of law that contract of general manager of electric company to extend electric service was beyond the usual course of business.**

In an action against an electric company for breach of a contract executed by its general manager, to extend its electric service, *held*, though the testimony is sufficient to raise an issue as to the extent of the authority of the manager and knowledge by plaintiff as to the limits of his authority, it was not sufficient to hold as a matter of law that the extension of the electric service was so out of the ordinary course of business that the corporation could only be bound by a contract made under the direct authority of the board of directors.

**10. Trial ☞351(2)—Court's decision on issue of authority of agent binds party failing to request submission of issue to jury.**

Where defendant failed to make a request for the submission of any issue as to the scope of its agent's authority in executing contracts, it is bound by the court's decision of the issue.

**11. Corporations ☞445—Conveyance by dissolving corporation of all its "property" of whatever character held an intention to include a cause of action for breach of contract.**

Where a dissolving corporation conveyed to plaintiff all of its "property" of every de-scription and authorized him to do any and every thing necessary to wind up the affairs of the corporation, it was the intent of the corporation to convey to plaintiff all of its property of whatever description, including a cause of action for damages for breach of contract.

**12. Contracts ☞74—Payment to third party at request of one party to contract is sufficient consideration.**

A payment of consideration to a third party at the request of one of the parties to a contract is sufficient to support the agreement, even if the party at whose request the payment is made receives no benefit himself therefrom.

**13. Electricity ☞11—Payment to water company under an electric and water contract entered into with the common general manager, held consideration to bind the electric company.**

Where plaintiff, believing that two public service corporations, one furnishing electricity and the other water, were in fact only one corporation, entered into a contract with their common general manager, plaintiff agreeing to pay expenses incurred by the water company in extending its operations to his property, and defendant electric company agreeing to extend its electric facilities to his property, *held* the advancement made by plaintiff for the purpose of putting in the water lines was a sufficient consideration to extend the electric service to plaintiff's property, even if he had known that the two companies were separate entities.

**14. Evidence ☞20(1)—Water and light businesses benefit mutually by extension of service of each.**

It is judicial knowledge that the water and light businesses go hand in glove; the one would have an interest in the extension of both services to a given locality in course of development, as the business of both would be increased by the dual service, while the business of one would be hampered by the lack of the other service.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by A. L. Huey against the Wichita Falls Electric Company, in which action plaintiff made application for writ of mandamus to compel specific performance by defendant of its contract with plaintiff. Judgment for plaintiff, and writ granted, and defendant appeals. Reversed and remanded.

Templeton, Beall, Williams & Worsham, of Dallas, and Bullington, Boone, Humphrey & Hoffman, of Wichita Falls, for appellant.

Henry F. Turner and Cox, Fulton & Myers, all of Wichita Falls, for appellee.

BOYCE, J. A. L. Huey brought this suit against the Wichita Falls Electric Company for damages and for mandamus. Plaintiff alleged that he was the owner of a large number of lots in the Scotland addition to the city of Wichita Falls; that the defendant

contracted with him to furnish plaintiff's property in such addition with electric light service; that it had breached this contract, causing damage to plaintiff's property in the sum of $30,000, which amount he sought to recover as damages. Plaintiff further alleged that defendant was a public service corporation, having a franchise to use the streets of the city of Wichita Falls for the purpose of furnishing its inhabitants with electric lights, and was the only person in the city furnishing such service; that it was the duty of the defendant to furnish such service to plaintiff's property and in particular it was the duty of the defendant to serve the inhabitants of the city without discrimination; that the defendant had discriminated against the plaintiff and owners of property in the Scotland addition in such matter. Wherefore he prayed that defendant be required by mandamus to furnish such electric service to plaintiff's property.

The court submitted to the jury special issues as to the agreement and the amount of damages sustained by its breach. The court charged the jury as to the measure of damages as follows:

"You are instructed that the proper measure of his [plaintiff's] damages would be the difference in the market value of plaintiff's property in said addition, with electric service and without such service, or in other words the amount the market value of plaintiff's property would have been enhanced, if any, by the extension of electric service to said addition at the time such service would have been given under such agreement, if any was made."

The jury found in plaintiff's favor on the issues submitted and assessed his damages at $14,000. No issue as to the mandamus feature of the case was submitted to the jury. The court entered judgment for the plaintiff for $14,000 and also directed the issuance of the writ of mandamus, commanding the defendant within six months after the entry of the judgment to make the necessary extension of its lines and furnish plaintiff's property in the Scotland addition with electric lighting facilities.

[1] A great many of the forty propositions presented on this appeal concern the mandamus feature of the case. The appellee has filed a motion to strike these out, and in support of the motion presents affidavits to the effect that the defendant has complied with the order for mandamus and has furnished the lighting facilities, as required by the judgment. The appellant, in reply to this motion, says that it has extended lighting facilities to a portion only of the Scotland addition and has done this in pursuance to an order of the city council of the city and not under the order of the district court. It has always been held by the appellate courts of this state that, where, pending an appeal, events have transpired which would render the question for decision moot, the appeal will not be considered, but the case itself will be dismissed. McWhorter v. Northcutt, 94 Tex. 86, 58 S. W. 720. The effect of appellee's motion is to request us to dismiss the mandamus feature of the case because of the fact that the defendants have complied with the judgment and furnished plaintiff all the relief he desires by way of mandamus. Such a proceeding might be proper in some cases, but, as we shall presently proceed to show, it would not meet the ends of justice under the facts of this case.

[2] Appellant's propositions present the contention that the judgment which awarded both damages and mandamus furnished plaintiff a double relief. We think the proposition well taken. We have already quoted the charge of the court submitting the measure of damages. Plaintiff testified that—

"The difference in the market value of those lots on an average at the time that the defendant company finally refused to put in those lights would be with the lights if they had been furnished, and without the lights as they were not furnished when they finally refused to, from $100 to $150 per lot, or loss of their value, 25 per cent. * * * I mean that we could have advanced them that much or 25 per cent. more if they had had the lights."

Other testimony was to the same effect, though some of the witnesses placed the percentage of increase in value from having electric lighting facilities at a lower figure. It is apparent that the basis of the damages as assessed was a lack of electric lighting facilities for a continuing and indefinite time. The court removed this basis of the estimate of damages when he required the defendant to put in the lighting facilities. Plaintiff, under the judgment, will receive both the benefit of the electric light facilities and damages on account of being without them. The case is somewhat like those in which recovery was had for depreciation in the value of property caused by a permanent nuisance, and at the same time abatement of the nuisance decreed (Kennedy v. Garrard [Tex. Civ. App.] 156 S. W. 570; Hockaday v. Wortham, 22 Tex. Civ. App. 419, 54 S. W. 1094; Trinity Portland Cement Co. v. Horton [Tex. Civ. App.] 214 S. W. 510); or where the plaintiff might recover damages for the total breach of the contract and at the same time a decree for its specific performance. We think the court erred in awarding both damages of the character here allowed and the mandamus. Some authorities seem to hold that both damages and mandamus cannot be awarded in any case. Smith v. Berryman, 272 Mo. 365, 199 S. W. 165, 1 A. L. R. 1692; Kendall v. Stokes, 3 How. 87, 11 L. Ed. 506; Notes American Law Reports, 1698. But we need not decide whether such a rule has any application to this case. If relief by mandamus were to be

granted at all, certainly that fact should have been taken into consideration in assessing the damages. In view of the additional relief granted by way of mandamus, the measure of damages, stated in the charge of the court, was not correct at least as to that part of the property still owned by the plaintiff at the time of the trial. South Memphis Land Co. v. McLean Hardwood Co., 179 Fed. 417, 102 C. C. A. 563.

[3] Now if, on appellees showing that the appellant has complied with the mandamus feature of the judgment, we should ignore entirely this feature of the case and affirm the judgment as to damages, we would, by such proceeding, consummate the wrong that was committed by the award of double relief in the first instance. When we consider the question as to whether the court was in error in awarding both damages and granting the mandamus and reverse the case on this account, we do more than settle merely a question of costs for while, on another trial, the issue of mandamus will no doubt be eliminated, the plaintiff's measure of damages, at least in part, will be different from that submitted on the former trial. But as the question of mandamus will not be before the court on another trial, it will not be necessary to consider any other of the appellant's propositions in reference to such matter.

[4, 5] It will be unnecessary to consider in detail all of the propositions presented by appellant. A disposition of them by a general discussion will be sufficient, and will indicate our views with reference to the law to be observed on another trial of the case. One contention urged by appellant is that the measure of damages submitted was, regardless of the mandamus feature of the case, erroneous because it allowed the recovery of speculative and uncertain profits. As we understand the facts, plaintiff owned a great many lots in the Scotland addition. He had built several houses and, relying on the agreement for lights, wired them for lighting by electricity. At the time of the defendant's refusal to comply with the contract, plaintiff had, unsold, about 625 lots. At the time of the trial he still owned the houses and a great many of the lots. As to that property which plaintiff still owned at the time when the electric service was furnished or directed to be furnished, the measure of his damages would not be that stated in the charge. As to such property the damages would be such as proximately resulted from the delay in getting the service. We need not enumerate the various items that might be taken into consideration in assessing such damages. See 20 C. J. pp. 339, 340, § 34, and authorities cited. The question as to the recovery of profits which plaintiff may have been prevented from making on those lots which he has sold, will depend on the facts proven. Recovery for loss of profits or for gains prevented may be had, provided it was in contemplation of the parties at the time of making the contract that such damages would naturally follow its breach and further that the amount of such damages may be ascertained with reasonable certainty. We refer to some authorities in which this rule has been applied to analogous cases. H. & T. C. Ry. Co. v. Molloy, 64 Tex. 607; Eckington Railway Co. v. McDevitt, 191 U. S. 103, 24 Sup. Ct. 36, 48 L. Ed. 112; South Memphis Land Co. v. McLean Hardwood Co., 179 Fed. 417, 102 C. C. A. 563; Blagen v. Thompson, 65 Cal. 169, 3 Pac. 647, 18 L. R. A. 315.

[6, 7] The alleged contract for the furnishing of the lights was made by the manager of the electric company at Wichita Falls. The furnishing of this service required an extension of the line of the company into territory not therefore covered by such lines. Appellant contends that the manager had no authority to bind the corporation by such contract, and many of the propositions complain of error in the admission and rejection of evidence and other proceedings growing out of the ramifications of this question. It was said by the Supreme Court, in the case of Fitzhugh v. Franco-Texas Land Co., 81 Tex. 306, 16 S. W. 1079, that in determining the question of a corporate agent's authority, these principals must be applied:

"First, the agent cannot have authority to do that which the corporation has not the power to do; second, he must, in case of a corporation under our general law, derive his authority from the board of directors; third, the directors may confer the authority by by-law or resolution, or probably by a vote not entered of record; and, fourth, when the power is conferred in neither of these methods it may be implied from a recognition and adopting of the agent's transactions, or other acts on part of the directors which would reasonably induce third parties dealing with him to believe, and to act upon the belief, that he has authority to do the act in question."

[8] There is no question that the corporation itself had authority to make the agreement. The by-laws of the corporation, which were offered in evidence by the defendant, were, we think, admissible. The testimony of two of the directors that they would have voted in favor of making the extension if it had been submitted to the board was not admissible. The board of directors should act as a body, and the corporation could not be bound by this expression of individual directors as to what would have been done with an unauthorized contract had it been submitted to them for approval or rejection.

[9, 10] The testimony is sufficient to raise an issue as to the extent of the authority of the manager at Wichita Falls and knowledge by plaintiff as to the limitation of his authority, but we do not regard it as conclusive either way. We do not think as a matter of

law that it could be said that the extension of this service was so out of the ordinary course of business that the corporation could only be bound by contract made under the direct authority of the board of directors. Booker-Jones Oil Co. v. National Refining Co., 63 Tex. Civ. App. 142, 131 S. W. 623, 132 S. W. 815; Cameron v. Lubbock Light & Ice Co. (Tex. Civ. App.) 167 S. W. 256; Hinton v. D'Yarmett (Tex. Civ. App.) 212 S. W. 518; C. J. vol. 14a, 95; Fletcher's Enc. of Corp. vol. 3, § 2098. The defendant made no request for the submission of any issue as to the agent's authority, and is bound by the court's decision thereof.

[11] Another proposition questions the plaintiff's ownership of the cause of action. The contract for the furnishing of the light facilities was made between defendant and the Scotland Realty Company. The realty company at such time owned all of the property subsequently acquired by the plaintiff, and still owned such property at the time of the final refusal of the defendant to install the light service. The plaintiff was the secretary of the Scotland Realty Company. A few days after the final refusal of the defendant to furnish the light service, the stockholders of the realty company adopted a resolution for dissolution of the corporation, and instructed the directors of the company to "convey to A. L. Huey all of the property of said corporation of every character, including real estate, vendor's lien notes, and every other character of property," and further provided that the deed should authorize the said A. L. Huey to do any and everything "which may be necessary to fully wind up the affairs of said corporation." Therefore the board of directors authorized the president and secretary to execute and deliver to A. L. Huey a conveyance in accordance with the resolution of the stockholders just mentioned. The president and secretary thereafter executed and delivered to the plaintiff, A. L. Huey, a deed which recited the passing of the resolution of the stockholders and the directors, and which conveyed to the said A. L. Huey "the legal title and the vendor's lien retained by it to all of the property owned by the Scotland Realty Company in Wichita county, Tex. This conveyance includes all vendor's lien notes together with the vendor's lien retained to secure the same; all cash and other property on hand as well as all unsold lots and real estate of every kind and character which on this date belongs to the Scotland Realty Company." It may be inferred that the conveyance was for the purpose of winding up the affairs of the corporation and was made for the benefit of the stockholders of such dissolved corporation. Be this as it may, we think it sufficiently appears that it was the intent of the corporation to convey to A. L. Huey all its property of whatever character. The term "property" as used in the resolutions and deed is, we think, sufficient to include this claim for damages. Bouvier's definition of property and authorities there cited.

[12-14] Another proposition is that there was no consideration for the contract. The evidence is to the effect that the agent who made the contract for the light service was also manager for the corporation supplying water to the city of Wichita Falls. The light and water companies were separate corporations but had the same manager. They used the same office and the same office force at Wichita Falls. The light and water bills were combined, and customers paid such bill usually by checks to the Wichita Falls Light & Water Company. The plaintiff, at the time he made the contract, did not know that there were two companies. When he approached the common manager of the light and water companies in reference to extending water and light facilities to the Scotland addition, such manager stated that the light extension might be made at a small expense, as the company had a high-powered line running along the edge of the addition, but that it would require about $17,500 to extend the water system, and the company did not have the cash available for this purpose. At this time it was agreed that the plaintiff's company would lend to the light and water company the sum of $17,500 to be used in making the extension of the water lines and as a part of this same agreement it was understood that there should also be an extension of the electric light lines. Later a written agreement covering the contract for the extension of water lines was prepared and executed by the water company and plaintiff. This agreement referred only to the extension of the water mains, and provided that the plaintiff would pay the cost of such extension as the expenses thereof were incurred and that the water company would repay such money to the plaintiff without interest when the receipts from water service to the Scotland addition should reach a certain amount. Plaintiff, even at the time of signing this contract, did not know that the water and light companies were separate corporations. The water lines were extended, and the plaintiff's company paid the costs thereof as agreed. We think the advancement of the money for the purpose of putting in the water lines was a sufficient consideration to support the agreement to put in the lights, even if plaintiff had known that the two companies were separate entities. A payment of consideration to a third party at request of one of the parties to a contract is sufficient to support the agreement, even if the party at whose request the payment is made receives no benefit himself therefrom. But it may be readily understood that the light company, under the circumstances of

this case, would receive a benefit from the extension of the water lines into the Scotland addition. We know, independent of the record in this case, that the water and light business go hand in glove. The one would have an interest in the extension of both services to a given locality in course of development as the business of both would be increased by the dual service, while the business of one would be hampered by the lack of the other service. We therefore think this proposition is not well taken.

This disposes in a general way of all material questions presented and necessary to be considered, in view of another trial.

Reversed and remanded.