Allan R. KLEIN, Appellant,

v.

Emory GARTH and Wife, Bobbye Garth, Appellees.

No. 12–83–0110–CV.

Court of Appeals of Texas, Tyler.

Aug. 30, 1984.

Rehearing Denied Oct. 4, 1984.

David Cohen, Graves, Dougherty, Hearon & Moody, Austin, for appellant.

Charles E. Fitch, DeLange, Hudspeth, Pitman & Katz, Houston, Robert R. Bradshaw, Austin, for appellees.

COLLEY, Justice.

Emory Garth and wife, Bobbye Garth (hereafter Garth), instituted this suit seeking cancellation of a trustee's sale made under a deed of trust executed by Curtis R. Biddle, Jr., as grantor, for the use and benefit of Fred Earhart, III, Trustee, and securing payment of a vendor's lien note in the original principal sum of $241,528, executed by Curtis R. Biddle, Jr., and payable to the order of Fred Earhart, III, Trustee, but later assigned to Allan R. Klein, Trustee, defendant/third-party plaintiff/appel-

lant. Garth also prayed for a decree of specific performance to compel Klein to execute and deliver partial releases of his liens, and to obtain releases from prior lien holders against certain properties purchased by Garth. Garth alternatively sought monetary damages for wrongful foreclosure by Klein of his liens against Garth's property. Klein answered, and filed a third-party action against Capital Land Title Company, third-party defendant/appellee for indemnity or contribution.

Following a jury trial on the disputed facts, the trial court rendered judgment on the verdict in favor of Garth cancelling the trustee's sale of the Garth properties under the deed of trust and ordering Klein to execute a release of his liens and to obtain releases from the prior lien holders covering the Garth property. The judgment also granted Garth an alternative money judgment in the event that Klein failed or refused within thirty days from the date of the judgment to comply with the specific performance ordered. The trial court judgment denied Klein any relief against Capital. We reform the judgment and affirm.

A brief statement of the title history of the lands involved is necessary to a proper understanding of this opinion.

On September 26, 1967, Louis C. Page, Louis F. Southerland and George M. Page conveyed a tract of land called 72.76 acres on the C.B. Townsend, W.P. Moore and Wiley Hudson surveys in Travis County abutting Lake Travis to Frank W. McBee, Jr., and Richard N. Lane. A part of the consideration for the conveyance was the execution and delivery by the grantees of a vendor's lien note in the original principal sum of $123,400, the repayment of which was secured by a vendor's lien as well as a deed of trust lien against the land conveyed. On August 2, 1971, Lane and McBee conveyed the 72.76 acres then called 72.644 acres and 1.463 additional acres acquired from other parties to Fred Earhart, III, Trustee, in consideration of an undisclosed amount of cash and the execution and delivery by Earhart of his vendor's lien note in the principal sum of $236,237.92

also secured by a vendor's lien and deed of trust lien against the 74.107 acres. The conveyance to Earhart was made subject to the prior vendor's liens and deed of trust liens existing in favor of Southerland and the Pages securing the payment of the $123,400 vendor's lien note executed by Lane and McBee, as well as two vendor's lien notes each in the amount of $6,500 payable to the order of The Austin National Bank and executed by Lane and McBee which were likewise secured by vendor's lien and deed of trust liens against the 1.463 acres mentioned above. Lane and McBee under the terms of their conveyance to Earhart were obligated to pay and discharge the $123,400 and the two $6,500 notes to protect Earhart; and, under the agreement of the parties to such conveyance, it was provided that should Lane and McBee fail to pay such notes or any installment thereon when due, Earhart, so long as he was not in default in the payment of his note to Lane and McBee, was entitled to pay any installment due on the pre-existing notes and receive credit therefor against the next maturing installments due Lane and McBee on the $236,237.92 note. On June 9, 1977, Earhart conveyed approximately 41 acres out of the 74.107-acre tract to Curtis R. Biddle, Jr. In consideration thereof, Biddle executed a vendor's lien note in the original principal sum of $241,528 payable to the order of Earhart and secured by vendor's and deed of trust liens against the 41-acre tract. This conveyance was executed and delivered subject to the prior liens and indebtedness heretofore described. On the same date, June 9, 1977, Earhart assigned such note and the liens securing the same to Klein.

Each of the deeds in the chain of title set out, and the various deeds of trust given as additional security for the payment of the vendor's lien notes discussed above contain similar conditions entitling the grantees in each such conveyance to secure from the lien holders, partial releases of such liens as to specific or segregated tracts in order to accommodate the development and sale of the properties. In this appeal, as well as at trial, the parties sometimes referred to

the terms and conditions of these title documents as a formula for determination of the amount of principal payments required for the granting of the partial releases as to segregated portions of the larger tract upon which such releases were sought. On November 17, 1977, Biddle conveyed the 41-acre tract to Curtis R. Biddle, Sr., who on December 19, 1977, conveyed the same to Silent Ridge Development, Inc., a corporation. The last two deeds recite a cash consideration and conveyed the properties subject to all "current indebtedness." It appears from the record that Curtis R. Biddle, Jr., and his wife are the principal, if not the sole owners of the shares of stock of Silent Ridge. At any rate, Biddle (and all references to Biddle hereafter in this opinion shall be to Curtis R. Biddle, Jr.) was at all times material to the controversy between the parties to this suit, the secretary/treasurer of the corporation and authorized to act in its behalf in respect to real property owned by the corporation.

Biddle's note to Klein provides that the principal thereof is repayable in ten equal annual installments of $24,152.80 each, and that interest at the rate of 7.35% per annum on the unpaid balance thereof was payable annually as it accrued. The first payment of principal and interest was due on or before July 1, 1977, and a like installment became due and payable on or before the same date of each succeeding year thereafter. The note's provisions permitted prepayments of principal but specified the annual installments to which it would be applied. The deed of trust executed by Biddle expressly provides that "[a]ny principal payments made on the note shall apply to the release of said tracts [upon which partial releases were sought]." Thus under the written agreement between Klein and Biddle both principal payments made on one of the ten annual installments, and prepaid principal for the purpose of securing the release of specific (segregated) tracts would necessarily have to be taken into account in arriving at the exact amount of principal due for partial releases of any tract of land under the formula set forth in the title documents.

On June 22, 1978, Silent Ridge sold Garth two lake front lots out of the land conveyed to it by Curtis R. Biddle, Sr. The transaction was handled and closed by Capital at its offices in Austin under an earnest money contract existing between the seller and buyer. The record discloses that Garth paid a total purchase price of $34,500, $1,000 of which was paid directly to Biddle, and the remaining $33,500 was paid into an escrow account owned by Capital. These funds were on Biddle's instructions paid over to Klein by Capital. Payment to Klein by Capital was by check dated July 11, 1978.

Approximately one week before the closing of the sale to Garth, Darlene Jacques, escrow secretary and closer for Capital, who initially handled the sale, contacted Klein by telephone to secure the "payoff" in order to free the land Garth was purchasing from the liens held by Klein and the prior owners. Jacques testified that she called Klein and "requested a payoff so we could send him his money along with a release to sign." Following this call Jacques testified further that Klein called back on the same day and left a message which was incorporated into a written memorandum made by a receptionist at Captial. That memorandum made by the receptionist (plaintiff's exhibit no. 8) reads:

"Allan Klein—(713) 225–9211
Curtis Biddle
$24,152.80 prin.
  15.977.08 int.
$40,129.88 total"

After reviewing the memorandum, Jacques testified that she again called Klein on the same day and told him that the purchase price was only $34,000 and that Klein suggested that Biddle execute a note personally to make up the difference between the $40,129.88 and the $34,000. She wrote in such memorandum the following words:

"payment of note
10 = payments
35,000
Note + diff + $1,000.00

$6129.88 total
Curtis R. Biddle, Jr. 6 mo. 8%"

She also testified that she told Klein that she was requesting a payoff on the Garth tracts which she identified to Klein on the telephone by reciting the square footage contained in such lots and the decimal fraction of an acre that each lot contained, as well as the name of the survey in which the lots were located.

Biddle became dissatisfied with Jacques' handling of the matter so she turned the closing over to Wilma Raney, a long-time employee and officer of Capital, to complete. Jacques wrote an explanatory note in longhand to Raney (plaintiffs' exhibit no. 9) relating instructions received from Klein about the note for part of the principal payment due, and a deed of trust covering the Silent Ridge acreage, excluding the Garth tracts to secure payment of the note requested. Based on this information received from Jacques, Raney proceeded to close the sale to Garth on June 22, 1978. On July 13, 1978, Raney mailed a letter to Klein with which was enclosed Capital's check for $33,500, a note for $8,129.88 signed by Biddle for Silent Ridge and a copy of the deed of trust (the original was promptly recorded by Capital) covering the 41-acre tract less and except therefrom, among other lands, the Garth tracts. That letter reads as follows:

July 13, 1978

Mr. Alan Klein
3110 McKinney
Houston, TX 77003

Re: Curtis R. Biddle, Jr.

Dear Mr. Klein:

Enclosed is the check in the amount of $33,500.00 note for $8,129.88, executed by Curtis R. Biddle, Jr. and copy of the Deed of Trust securing note.

We need partial releases of lien from Page, Southerland and Page; Richard N. Lane and Frank W. McBee, Jr. Allan R. Klein, Trustee and First City National Bank covering:

1. 0.714 acre tract;
2. 0.688 acre tract: (copies attached);
[Garth tracts]

3. Lot 1 Biddle Subdivision; and Lot 19

Commander's Point.

I will appreciate your sending the above at the earliest time.

Very truly yours,
/s/ Wilma Raney
Wilma Raney
Vice-President

WR: bh
enclosure

Raney testified that a metes-and-bounds description of the two Garth tracts was also mailed to Klein with the letter above.

Raney further testified that because the cash available from the sale to Garth was only $33,500, she called Klein back to advise him of the $1,500 shortage and testified that Klein told her to add that to the note. Inadvertently, the lawyer for Capital in preparing the note to Klein drafted the note in the amount of $8,129.88 instead of the correct amount of $7,629.88 as requested by Klein. The record shows that later these errors were corrected by Klein's attorney who drafted a note-guaranty instrument in the correct amount for Biddle's signature which was mailed by Klein's attorney to Biddle directly for signature. Raney's testimony establishes that Klein's attorney requested that Capital prepare the partial releases and forward them to him; that such was accomplished during the latter part of July 1978. Klein never returned the executed releases and never offered to do so. Raney further testified that at no time did Klein advise her that the sum of money tendered to him in the cash and by Silent Ridge's and Biddle's note was in an insufficient amount to entitle Garth or Silent Ridge to the partial releases requested. She further testified that on December 22, 1978, Biddle gave her his check in the amount of $7,629 to transmit to Klein in payment of Silent Ridge's note to Klein with instructions to hold the check until Klein delivered the partial releases covering the Garth tracts; and that on November 6, 1979, following the trustee's sale, and at a time when Garth, Klein

and his attorney Paul W. Nimmons, Jr., were in her office at Capital, Klein observed the check in the file and told her that had that money been paid to him the releases "would have been sent."

Klein's version of the telephone conversations between him and Jacques and Raney was that he was asked only to give the payoff amount of the annual installment of principal and interest due on July 1, 1978, on Biddle's note to him. Klein denied that he intentionally relinquished any rights to require compliance with the terms and conditions of his deed of trust respecting the amount of money due for partial releases covering the Garth tracts. He did admit, however, that partial releases were discussed by him with both Jacques and Raney before the closing of the sale to Garth by Silent Ridge.

Biddle failed to make the annual payment on the $241,528 note due on July 1, 1979. Klein caused notice of sale to be given by his substitute trustee, Paul W. Nimmons, Jr., and on November 6, 1979, said trustee sold the 41-acre tract, including the lots purchased by Garth, to Klein for $220,000.

Klein contends by his point of error 6 that the evidence is legally and factually insufficient to support the jury's finding in response to Special Issue No. 1 that he waived his right to insist on compliance with the provisions of his deed of trust for obtaining partial releases of his liens as to the Garth tracts. Klein also argues under his points of error 1, 2 and 3 that such finding does not authorize the judgment rendered by the trial court.

Because of the complexity of the factual setting giving rise to the dispute between the parties, we have carefully studied the record in this case. We have also, in some detail, discussed what we consider to be the material testimony and documentary evidence presented by the parties before the jury.

■ Our inquiry regarding waiver is whether the conduct of Klein amounts to an intentional relinquishment of his right to insist upon full payment of the principal sum due for releases of the Garth tracts from the liens and indebtednesses held by him or whether his intentional acts, words and conduct, as shown by the evidence, were inconsistent with claiming such right. *Massachusetts Bond and Ins. Co. v. Orkin Exterm. Co.*, 416 S.W.2d 396, 401 (Tex.1967); *United States Fidelity & Guaranty Co. v. Bimco Iron & Metal Corp.*, 464 S.W.2d 353, 357 (Tex.1971). Based on our review of that evidence, we have concluded that it is sufficient to support the jury's answer to Special Issue No. 1. The jury is the sole judges of the facts proved, of the credibility of the witnesses and the weight to be given their testimony. The evidence presented on the fact issue submitted in Special Issue No. 1 was conflicting, and in some respects confusing and ambiguous, but it was the jury's duty and sole responsibility to resolve the conflicts and ambiguities existing, and determine whether Klein intentionally gave up his right to insist on the full payment of the amount of principal on his note required under the formula provided therefor by the deed of trust, before he was required to execute and deliver the partial releases requested. This the jury has done and under this record we will not disturb that finding. Such finding does support the judgment. Klein's points of error 1, 2, 3 and 6 are overruled. Because of our holding respecting the above-enumerated points, it is not necessary for us to consider Klein's points of error 4, 5 and 7.

■ Klein by his point of error 8 contends, in effect, that the trial court erred in rendering an alternative judgment that Garth recover from Klein the sum of $80,000 with interest thereon in the event that Klein fails within thirty days from the date of the judgment to release the liens held by him and to obtain the releases from the two prior lien holders. Garth argues that the court properly exercised its equitable jurisdiction in granting the alternative judgment for the market value (as of the time of trial) of the two lots. In response to Klein's contention that there are no pleadings and evidence to support the alterna-

tive money judgment, Garth further argues that an alternative cause of action for damages for wrongful foreclosure was alleged, and that the parties stipulated that the market value of the lands *at the time of trial* was $80,000. In support of this position Garth cites *Black v. Burd*, 255 S.W.2d 553 (Tex.Civ.App.—Fort Worth 1953, writ ref'd n.r.e.). As Garth practically concedes, *Black v. Burd, supra,* is inapposite, primarily because in that case the trustees' sales were not cancelled, but rather the judgment allowed the defendant as counter-plaintiff two options to recover his monetary damages, viz., (1) by the payment by him of $6,955.36 in cash into the registry of the court whereupon he would receive title and ownership of two vendor's lien notes executed in Black's favor by subsequent grantees of the land or, (2) recovery of $1,352.91 from the plaintiff/counter-defendant Black representing the excess of the value of the properties wrongfully sold by the trustees under the two deeds of trust over the debt owed by Burd to Black on the two lots. The judgment in *Black v. Burd, supra,* required Burd in either event to execute quitclaim deeds in favor of Black. Further, Burd had in that case abandoned his claim for equitable action for cancellation of the trustees' deeds for wrongful foreclosure, and sought monetary damages in accordance with the well-established rule. *John Hancock Mutual Life Ins. Co. v. Howard*, 85 S.W.2d 986 (Tex. Civ.App.—Waco 1935, writ ref'd); *Owens v. Grimes*, 539 S.W.2d 387 (Tex.Civ.App.— Tyler 1976, writ ref'd n.r.e.). In the case before us, Garth pleaded a primary cause of action for cancellation of the trustees' sale and for specific performance, and alternatively sought damages for wrongful foreclosure by Klein in the amount of *$50,- 000.* The trial court by the provisions of its judgment cancelled the trustees' sale as to the Garth tracts and ordered Klein to grant a release of his vendor's and deed of trust liens, as well as to obtain partial releases from the two prior lien holders as to the properties in question. Garth was entitled to appropriate relief under the pleadings and the jury's answer to Special Issue No. 1, that is, cancellation and specific performance as ordered by the trial court *or* money damages resulting by reason of the wrongful foreclosure, but not both. *Jones v. Rainey*, 168 S.W.2d 507, 509 (Tex.Civ.App. —Texarkana 1943, writ ref.); *Wichita Falls Elec. Co. v. Huey*, 246 S.W. 692, 694-5 (Tex.Civ.App.—Amarillo 1923, no writ). The judgment by its provisions voids the sale made under the deed of trust and therefore effectively restores Garth's title to the land in question and discharges the liens and indebtedness formerly held by Klein in and against said land. Klein was obligated under the conditions for partial releases set forth in the title documents [1] to secure partial releases from the two prior lien holders as to the Garth tracts, and the trial judge in order to grant full relief to Garth correctly ordered Klein to obtain the same for Garth's benefit. However, since the trial court granted such equitable relief, under this record it was without power to award a conditional alternative money judgment in any amount effective if Klein failed to provide a partial release from one or both of the prior lien holders. *Jones v. Rainey, supra; Wichita Falls Elec. Co. v. Huey, supra.* Klein's point of error 8 is sustained. We need not address point of error 9.

■ Klein, by his point of error 10, contends that the trial court erred in not granting him a judgment over and against Capital because the jury found in response to Special Issue 4(e) that Capital negligently failed to inform Garth promptly that

---

1. The deed from Earhart to Biddle contained a provision reading: "Grantor warrants that he has the right to have segregated portions of the property hereinabove described released from the liens securing payment of the aforesaid $123,400.00 and $236,237.92 and $6,500.00 notes. Upon compliance by Grantee with the provisions requiring releases from the lands se-

curing payment of said promissory Note, then Grantor (or the then holders of said Note) shall proceed to secure corresponding releases from the liens securing the $6,500.00, $123,400.00, $236,237.92 and $29,300.00 Promissory Notes within the said twenty (20) day period." (The Deed of Trust from Biddle contained an identical provision.)

Klein had refused to sign and deliver the partial releases, and that such failure was a proximate cause of Garth's damages. Capital responds by saying that the evidence is legally and factually insufficient to support the finding that such failure on the part of Capital was a proximate cause of Garth's damages. We agree. Also, the finding that Klein waived his right to insist on payment to him of the amount of money properly due under the formula [2] contained in his deed of trust before he was obligated to execute partial releases, rendered the finding embodied in the jury's response to Special Issue 4(e) immaterial as it relates to Klein's cause of action against Capital. Klein's point of error 10 is overruled.

We reform the judgment of the trial court by striking therefrom paragraph 6 reading:

> 6. It is further ORDERED, ADJUDGED AND DECREED by the Court that should the said Defendant Allan R. Klein, Individually and as Trustee, fail or refuse to so sign, execute, acknowledge and deliver the partial release mentioned in paragraph 3 and to obtain and deliver the partial releases mentioned in paragraphs 4 and 5 above [prior lien holders], unto the said Plaintiffs, Emory Garth and wife, Bobbye Garth, as above ordered within the said 30 day period from and after this judgment is signed, then, and upon such failure or refusal of said Defendant Allan R. Klein, Individually and as Trustee to release the above described tracts and obtain releases from the other two liens holders mentioned above, or any of them, then, and upon such failure or refusal of said Defendant, it is hereby ORDERED, ADJUDGED AND DECREED that Plaintiffs, Emory Garth and wife, Bobbye Garth, do have and recover judgment of and from Defendant, Allan R. Klein, Individually and as Trustee, in the sum of $80,000.00, together with interest thereon at the rate of 6% percent per annum from November 9, 1979, to the date of judgment herein,

and for interest thereon after the date of this judgment, at the maximum legal rate, for all of which let execution issue.

As reformed, the judgment of the trial court is affirmed.

---

**2.** Although the correct amount of principal payment due under the deed of trust formula for partial releases on the Garth tracts was not established, it is undisputed that that amount paid to Klein was insufficient under such formula.